UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LAUSTEVEION JOHNSON, | Case No. 2:13-cv-00110-RFB-GWF |
| Plaintiff, | |
| v. | **ORDER** |
| NEVADA DEPARTMENT OF CORRECTIONS, *et al.*, | |
| Defendants. | |

## I.    INTRODUCTION

This case is before the Court on a Motion for Summary Judgment filed October 10, 2014 by Defendants, who are various officials employed at Ely State Prison and within the Nevada Department of Corrections (NDOC), as well as NDOC itself. ECF No. 105. In this case, Plaintiff Lausteveion Johnson alleges that Defendants violated his right to exercise his religion, retaliated against him for insisting on being served a *halal* diet, discriminated against him because of his religion, delivered cruel and unusual punishment, and were deliberately indifferent to his serious medical need. The Court held a hearing on Defendants' Motion for Summary Judgment on August 18, 2015, at which it granted the motion in part and denied it in part and stated that it would issue a written order elaborating on its ruling. See ECF No. 123. This Order sets forth the reasoning for the Court's decision.

Johnson has also filed a Motion for Judgment on the Pleadings. ECF No. 129. For the reasons stated in this Order, the motion is denied.

1    **II.    BACKGROUND**

2         **A. Relevant Facts**

3         The parties dispute many of the relevant facts in this case. Based upon the Court's review

4    of the parties' papers and statements at oral argument, the uncontested facts in this case are as

5    follows. Johnson is in the custody of NDOC and, although he is currently incarcerated at High

6    Desert State Prison, for all times relevant to this case he was incarcerated at Ely State Prison (ESP).

7    Johnson is Muslim, and as part of his faith he adheres to a *halal* diet, observes the holy month of

8    Ramadan, and wears a type of headwear known as a kufi. On February 1, 2012, when he was first

9    transferred to ESP, Johnson's kufi was confiscated. When he asked to have it returned to him,

10   Defendant Sergeant April Witter wrote an unauthorized property notification stating that the kufi

11   was unauthorized because it was determined to have been altered.

12        Subsequently, Johnson filed multiple grievances between June and September of 2012 in

13   which he alleged that he was being served food that was moldy, rotten, burnt, and/or still frozen.

14   Other times, Johnson alleged that he was not served meals at all. On August 6, 2012, while in

15   solitary confinement, Johnson notified ESP officials through the emergency call button and

16   emergency grievances that he was having an extreme psychological episode and needed to see a

17   psychologist or psychiatrist. However, Johnson was not seen by any mental health professional

18   that day. Later on August 6, 2012, Johnson attempted suicide and injured his neck in the process.

19   Johnson was seen by a mental health professional on August 10, 2012.

20        On October 18, 2012, Johnson received a Notice of Charges ("NOC") for abuse of the

21   grievance process. The NOC indicated that Johnson had filed numerous unfounded and frivolous

22   grievances between June 28, 2012 and September 2012. A disciplinary hearing was held on

23   December 3, 2012, and Johnson was found guilty.

24        The remainder of the facts relevant to this case are disputed. Therefore, the Court lists the

25   facts applicable to each claim as alleged by Johnson and by Defendants.[1]

26        ***1. Halal Diet***

27   _____

28        [1] The disputed facts are taken from the evidence filed in connection with Defendants'
     Motion for Summary Judgment (ECF No. 105).

1    Johnson's version of the facts related to his diet is as follows. From April to August 2012,

2    Johnson was supposed to be on a diet known at ESP as the Kosher/Halal diet. Almost daily from

3    April 1, 2012 until August 23, 2012, Defendants Lopez, Hall, Nakashima, and Rigney served him

4    bagels that were moldy and months past their "best if served by" date. On many of those days, he

5    was also served rotten oranges and burnt omelets. The amount of food he was served at mealtimes

6    was also significantly reduced, and that on some days he did not receive meals at all. Johnson

7    typically refused to eat the moldy and rotten food, but did eat it a few times out of desperation and

8    hunger. Each time, he vomited after eating the food.

9    Defendants state that Johnson's food portions were not reduced, nor was he served moldy

10   or rotten food. Defendants admit that Johnson was served a moldy bagel on one occasion, but state

11   that the bagel was immediately swapped out for a fresh one when it was brought to their attention.

12                              *2.   Observance of Ramadan*

13   Johnson also alleges that Defendants Kennedy, Hunt, Lopez, Baker, Miller, Howard,

14   Brown, Davis, Lawrence, and Ramsey unlawfully interfered with his ability to observe the Muslim

15   holy month of Ramadan. The facts as presented by Johnson are as follows. In 2012, Ramadan

16   began on July 20 and ended on August 18. Johnson was not placed on the list to receive meals at

17   non-daylight hours during Ramadan, despite requesting to do so prior to the start of Ramadan.

18   Defendants delayed placing Johnson on the Ramadan list for the first week of Ramadan by telling

19   him that he could either be on the Ramadan list or the Kosher/Halal diet list, but not both. Johnson

20   was placed on the Ramadan list on July 27, but Defendants then began to issue him non-*halal*

21   meals. Johnson then requested to receive *halal* meals, and was taken off the Ramadan list. Johnson

22   was placed back on the Ramadan list on August 1, 2012. However, instead of bringing him meals

23   before sunrise and after sunset, Defendants brought Johnson his meals during normal daylight

24   hours. As a result, Johnson was not able to fast on those days. From August 4-6, Johnson claims

25   he was not served lunch at all.

26   On August 6, after not being served lunch, Johnson had an extreme psychological episode

27   as a result of the alleged retaliation and discriminatory behavior. Johnson began pushing his

28   emergency medical button at 11:00 A.M., but no one appeared until 1:30 P.M. Johnson stated that

he needed to see a psychiatrist or psychologist, but Defendants refused to send anyone. Johnson also filed an emergency grievance requesting the same, which was denied for the stated reason that his request was not an emergency. Later that day, Johnson attempted suicide by hanging. The rope he used broke during the attempt, and Johnson injured his neck.

After Johnson's suicide attempt, he alleges that Defendants began bringing him meals that were still frozen. Johnson states that Defendants refused to heat up the meals even though he made verbal and written requests that they do so.

Defendants deny that they served meals that were still frozen to Johnson and have provided a declaration stating that the meals were hot from the culinary when delivered. Defendants also presented evidence that Johnson was on the Ramadan list as of August 1, 2012. Further, Defendants presented a declaration from Bert Jackson, a staff psychologist who personally examined Johnson on multiple occasions. Jackson states that Johnson was seen in April 2012 and again at his cell door in July 2012, and that he did not request medication or exhibit any signs of suicidal ideation. Further, Jackson did not see any indication of mental instability, weight loss, suicidal ideation, or an injured neck in Johnson's medical records.

### 3. Confiscation of Kufi

Finally, Johnson alleges that his kufi was confiscated by Defendant Witter when he was transferred to ESP on February 1, 2012.  Johnson made repeated requests to get his kufi back, but Witter stated that the kufi had been altered and therefore violated NDOC regulations. Johnson presented evidence showing that he received the kufi six years prior to it being confiscated and that several NDOC officials at other institutions, including wardens and other high-ranking officials, had seen and approved of the kufi. Johnson also avers that the kufi had not been altered, but rather had simply been sewn to repair a hole in it.

In response, Defendants cite to NDOC Administrative Regulation 810, which provides a chart of permitted items for each faith group. The chart states that Muslim men are allowed one black, standard-size Kufi. In her declaration, Defendant Witter states that Johnson's kufi was not returned to him because it had been altered and was deemed unauthorized. Witter also states that maintaining organization and conformity of inmates' property is essential to overall safety and

security at ESP, and that altering or sewing a kufi raises security risks because the kufi could be used as a weapon or escape tool.

### B.  Procedural History

Johnson brings four causes of action in his Second Amended Complaint, filed on July 2, 2014: 1) First Amendment free exercise claim; 2) Fourteenth Amendment equal protection claim; 3) First Amendment retaliation claim; and 4) Eighth Amendment claim. ECF No. 77. On August 18, 2014, Johnson filed a Motion for Entry of Clerk's Default against Defendants Belmore, Ramsey, and Kennedy. ECF No. 94. On September 5, 2014, Johnson filed a Motion for Order to Show Cause seeking an order for Defendants Cox and Baker to send Johnson's box of legal paperwork and his reading glasses to him at Northern Nevada Correctional Center. ECF No. 96. On October 10, 2014, Defendants filed a Motion for Summary Judgment on all of Johnson's claims. ECF No. 105.

The Court held a hearing on these pending motions on August 18, 2015. At the hearing, for reasons stated on the record, the Court denied Johnson's Motion for Entry of Clerk's Default and Motion for Order to Show Cause. Minutes of Proceedings, ECF No. 123. The Court also denied Defendants' Motion for Summary Judgment and stated that it would issue a written order. Id. This Order sets forth the Court's reasoning for denying the Motion for Summary Judgment.

### III.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).

Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. If it fails to carry this initial burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Id. at 1102-03. If the movant has carried its initial burden, "the nonmoving party must produce evidence to support its claim or defense." Id. at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists. Nissan Fire, 210 F.3d at 1102.

## IV.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

After reviewing the parties' papers and supporting exhibits, the Court grants summary judgment in part and denies it in part, as set forth below.

### A.  Count One – First Amendment Free Exercise Claim

#### 1.  *Applicable Law*

To implicate the Free Exercise Clause of the First Amendment, the plaintiff must show that a prison regulation substantially burdened a belief that is sincerely held and religious in nature. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994). To be a "substantial burden," the regulation must do more than simply

inconvenience one's exercise of religion. Int'l Church of Foursquare Gospel v. City of San Leandro, 673 F.3d 1059, 1067 (9th Cir. 2011). A substantial burden exists where the regulation exerts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter, 456 F.3d 978, 988 (9th Cir. 2006) (quoting Thomas v. Review Bd. of the Indiana Emp't Sec. Div., 450 U.S. 707, 728 (1981)).

Once the plaintiff has shown a substantial burden of a sincerely held religious belief, the court must determine whether the prison regulation or action was "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). If so, it is still valid in light of the deference courts give to prison officials. Id. In considering whether a restriction is valid, courts consider four relevant factors, known as the Turner factors: 1) Whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; 2) Whether alternative means of exercising the right remain open to inmates; 3) "[T]he impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) Whether "ready alternatives" to the challenged regulation exist. Turner, 482 U.S. at 89-90; see also Pierce v. Cnty. of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). The Turner factors also apply in cases such as this one where the burden arises not from a regulation, but from "[r]estrictions on access to religious opportunities." Pierce, 526 F.3d at 1209.

### 2. Summary Judgment Is Denied on Johnson's Free Exercise Claim

The Court finds that summary judgment must be denied on Johnson's free exercise claim. First, Johnson has provided evidence that his beliefs in the importance of the halal diet, participating in Ramadan, and wearing a kufi are sincerely held and religious in nature. Aff. of Lausteveion Johnson, Opp'n Mot. Summ. J. Ex. A, ECF No. 112 ("Johnson Aff."). Defendants do not dispute the sincerity of his beliefs or that they are religious in nature.

Second, Johnson has presented evidence to enable a reasonable factfinder to find that Defendants substantially burdened these beliefs. This evidence includes the following: that Johnson was repeatedly served moldy, rotten, and otherwise inedible food while on the *halal* diet from April 2012 to August 2012; that Defendants reduced the amount of food given to Johnson

because he was on the *halal* diet in 2012; that Johnson was prevented from receiving meals on the Ramadan schedule in 2012; that Johnson was made to choose between receiving *halal* meals or being on the Ramadan list; that Defendants served frozen meals to Johnson during Ramadan of 2012 and refused to heat them up; that Defendants refused to serve Johnson any meals at all on specific occasions in 2012; that Johnson's kufi was not "altered" and had previously been approved by NDOC officials on multiple occasions; and that Defendants took some or all of these actions because of Johnson's religion. See Section II.A, supra. While Defendants dispute these facts, a rational trier of fact could resolve the disputes in Johnson's favor and find that Defendants substantially burdened Johnson's beliefs.

Third, given that Johnson has presented enough evidence to establish a genuine issue of material fact as to whether Defendants substantially burdened his sincerely held beliefs, the Court looks to the Turner factors to determine whether their actions were nonetheless justified. In order to grant summary judgment for Defendants, it is required that they satisfy the first Turner factor (showing that the challenged regulation or action has a legitimate or rational connection to a valid governmental objective). Prison Legal News v. Cook, 238 F.3d 1145, 1151 (9th Cir. 2001). However, even if a defendant initially satisfies this prong, an inmate plaintiff can rebut this showing by "present[ing] sufficient (pre or post) trial evidence that refutes a common-sense connection between a legitimate objective and a prison regulation." Frost v. Symington, 197 F.3d 348, 357 (9th Cir. 1999). If the plaintiff does so, "the state must present enough counter-evidence to show that the connection is not so remote as to render the policy arbitrary or irrational." Id.

Viewing the evidence and drawing all reasonable inferences in the light most favorable to Johnson, the Court finds that Defendants have failed to satisfy the first Turner factor, and thus cannot obtain summary judgment on Johnson's free exercise claim.

With respect to Johnson's allegations that Defendants denied him *halal* meals and did not serve him meals on the Ramadan schedule on time, Defendants have not shown any legitimate or rational connection to a valid governmental objective, and thus cannot make even an initial showing that the first Turner factor is satisfied. Instead, Defendants deny that these actions occurred. As discussed above, however, Johnson has presented sufficient evidence to raise genuine

1    issues of material fact as to these allegations. Therefore, Defendants cannot prevail on summary

2    judgment with regard to Johnson's allegations regarding his meals.

3         With respect to Johnson's allegation that Defendants confiscated his kufi, Defendants

4    argue that their decision to do so was justified by NDOC Administrative Regulations 711 and 810,

5    which allow men of the Muslim faith to possess one black or white standard-size kufi, available

6    from the canteen for purchase. Defendants argue they have a security interest in organization and

7    conformity and that allowing Johnson's kufi could raise security risks. However, in response,

8    Johnson has provided a declaration stating that he cannot wear the standard kufi, and states in his

9    brief that it will not fit on his head because it is too small and because Johnson has dreadlocks.

10   Decl. of Lausteveion Johnson ¶ 3, Pl.'s Opp'n Mot. Summ. J. Ex. A, ECF No. 112 ("Johnson

11   Decl."). Johnson also states in his declaration that his kufi was not altered and that it could not

12   have been used as a weapon or escape tool, whereas hundreds of other objects available to inmates

13   could potentially be used as such. Id. Johnson has also produced evidence that sewing kits are

14   available for purchase by inmates at ESP, which undermines Defendants' claim that the act of

15   sewing can lead to serious security risks. Inmate Store Price List at 7, Pl.'s Opp'n Mot. Summ. J.

16   Ex. D, ECF No. 112-3. Finally, Johnson's affidavit states that the kufi was given to him in 2006

17   or early 2007, which casts doubt on Defendants' claim that confiscation of the kufi was justified

18   by security concerns given that the kufi was not confiscated until 2012. Johnson Aff. at 6.

19        The evidence regarding the confiscation of Johnson's kufi is sufficient to "refute[] a

20   common-sense connection" between Defendants' actions and policies and their stated justification

21   of prison safety and security. Frost, 197 F.3d at 357. The burden is thus on Defendants to "present

22   enough counter-evidence to show that the connection is not so remote as to render the policy

23   arbitrary or irrational." Id. at 357. Defendants have not met this burden. Although Defendants

24   claim that the regulations prohibiting nonstandard kufis are justified by a general need for security,

25   they do not articulate, even in a general sense, how these regulations actually promote prison

26   security given Johnson's evidence to the contrary. Nor have Defendants given an explanation for

27   why Johnson's kufi was allegedly approved between 2006 and 2012 and then suddenly

28   confiscated. Therefore, even in light of the deference due to prison officials, the Court finds that

1  Defendants have not established that the first <u>Turner</u> factor is in their favor. Because the Court has

2  found that Defendants have not established a rational relationship under the first factor as is

3  required, summary judgment is denied on Johnson's free exercise claim as alleged in Count One,

4  and the Court need not consider the other <u>Turner</u> factors. <u>Prison Legal News</u>, 238 F.3d at 1151.

5

6  **B. Count Two – Fourteenth Amendment Equal Protection Claim**

7  *1. Applicable Law*

8  To state a claim for a violation of the Equal Protection Clause of the Fourteenth

9  Amendment under 42 U.S.C. § 1983, "a plaintiff must show that the defendants acted with an

10  intent or purpose to discriminate against the plaintiff based upon membership in a protected

11  class." <u>Furnace v. Sullivan</u>, 705 F.3d 1021, 1030 (9th Cir. 2013). "To avoid summary judgment,

12  [Johnson] must produce evidence sufficient to permit a reasonable trier of fact to find by a

13  preponderance of the evidence" that the actions taken were religiously motivated. <u>Serrano v.</u>

14  <u>Francis</u>, 345 F.3d 1071, 1082 (9th Cir. 2003).

15  *2. Summary Judgment Is Granted in Part and Denied in Part on Johnson's*

16  *Equal Protection Claim*

17  The Court finds that summary judgment must be denied on Johnson's equal protection

18  claim to the extent it relates to his *halal* diet and observance of Ramadan. However, the Court will

19  grant summary judgment in favor of Defendants with respect to Johnson's equal protection claim

20  regarding the Eid-al-Fitr feast and the confiscation of his kufi.

21  As it relates to Defendants' alleged interference with his *halal* diet, Johnson has provided

22  sufficient evidence to establish genuine issues of disputed fact from which a rational trier of fact

23  could determine that Defendants acted with discriminatory intent. Johnson's affidavit states that

24  Defendants attempted to convince him and other inmates to opt out of the Kosher/Halal diet in

25  February and March of 2012. Subsequently, when Johnson refused, he received moldy, rotten, and

26  frozen food—or no food at all—for his meals beginning in April and lasting until August. Johnson

27  Aff. at 2-5. Johnson also states in his declaration that Defendants refused to replace his food when

28  he complained about it, but would replace the food of inmates receiving the ordinary diet if there

were complaints. Johnson Decl. ¶ 9. This is sufficient evidence from which a jury could infer that Defendants discriminated against Johnson because of his religion.

In their motion for summary judgment, Defendants argue that Johnson cannot prevail because all inmates of all religions receive the Common Fare diet, which is approved by a rabbi, given to everyone, and an appropriate diet for Muslims. However, Johnson has provided evidence that ESP did not move inmates off the Kosher/Halal diet and onto the Common Fare diet until July 1, 2013, which is after the events alleged in this case. Pl.'s Opp'n Mot. Summ. J. Ex. H.

Defendants do not argue or present evidence in support of granting summary judgment on the equal protection claim as it relates to the observance of Ramadan. Therefore, the Court will deny summary judgment on this portion of the claim as well. See Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").

However, Johnson has provided no evidence of an intent to discriminate by Defendants with respect to his participation in the Eid-al-Fitr feast in 2012 or the alleged confiscation of his kufi. First, Johnson argues in his brief that he was prevented from participating in the Eid-al-Fitr feast in 2012, but presents no evidence in support of this allegation. By contrast, Defendants produced a declaration from Defendant Lopez stating that all inmates, including Muslim inmates, were allowed to partake in holiday meals. Second, although Johnson argues that his kufi was not unauthorized or in violation of NDOC regulations, he has not provided any evidence from which a jury could infer that Defendants confiscated his kufi because of his religion.

Therefore, summary judgment is denied on Count Two as it relates to Johnson's halal diet and observance of Ramadan, but is granted in favor of Defendants with respect to Johnson's participation in the Eid-al-Fitr feast and the confiscation of his kufi.

## C. Count Three – First Amendment Retaliation Claim

### 1. *Applicable Law*

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012). To establish a First Amendment retaliation claim within the prison context, a plaintiff must establish five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2004). Additionally, courts must "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995).

### 2.   *Summary Judgment Is Granted in Part and Denied in Part on Johnson's Retaliation Claim*

The Court concludes that summary judgment must be granted in favor of Defendants on Johnson's retaliation claim as it relates to the confiscation of his kufi.[2] Although Johnson alleges in his Second Amended Complaint and his opposition papers that Defendants confiscated his kufi in retaliation to his engagement in the protected conduct of wearing the kufi, he has not presented any evidence of such a link. There is simply no evidence in the record, direct or circumstantial, that would support a finding that Johnson's kufi was confiscated because of his status as a Muslim or because he had been wearing it.

However, Johnson's retaliation claim may proceed as it relates to his diet, his observance of Ramadan, his participation in the Eid-al-Fitr feast, and the issuance of the NOC. As was the case with Count Two, Defendants did not argue in their motion that summary judgment should be granted in their favor on this claim as it relates to these allegations, nor did they present any supporting evidence in their moving papers. See <u>Celotex</u>, 477 U.S. at 323.

### D.  Count Four – Eighth Amendment Deliberate Indifference Claim

---

[2] While the Court indicated at the hearing on this matter that it was denying summary judgment on this issue, the Court finds that its previous oral ruling was in error and reconsiders that ruling here.

1          *1.  Applicable Law*

2          To establish an Eighth Amendment claim against prison officials, the plaintiff must "show

3    that he was deprived of something sufficiently serious" and that this deprivation "occurred with

4    deliberate indifference to the inmate's health or safety." <u>Foster v. Runnels</u>, 554 F.3d 807, 812 (9th

5    Cir. 2008). Food deprivation can be "sufficiently serious" if it is sustained and "results in pain

6    without any penological purpose." <u>Id.</u> at 814. In the case of medical treatment, a deprivation is

7    "sufficiently serious" if failure to treat the condition could result in "significant injury or the

8    unnecessary and wanton infliction of pain." <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1081 (9th Cir. 2014).

9    An official acts with deliberate indifference where she "was aware of a risk to the inmate's health

10   or safety and . . . deliberately disregarded the risk." <u>Foster</u>, 554 F.3d at 814.

11         *2.  Summary Judgment Is Denied on Johnson's Deliberate Indifference Claim*

12         The Court finds that summary judgment must be denied on Johnson's Eighth Amendment

13   claim. Johnson has produced evidence from which a reasonable jury could conclude that

14   Defendants were deliberately indifferent to his health and safety by repeatedly providing him

15   inedible food or failing to provide him food at all and by denying him medical attention when he

16   requested it prior to his attempted suicide.

17         First, based on the affidavits of Johnson and of Marrio Moreland, there is a genuine issue

18   of disputed fact as to whether Defendants repeatedly served Johnson with moldy, rotten, and/or

19   frozen food and whether they refused to serve him meals at all on some days, despite Johnson's

20   filing of multiple grievances notifying them of these actions. A jury could therefore reasonably

21   infer that Defendants deliberately disregarded Johnson's need for adequate nutrition. <u>See</u> Johnson

22   Aff. at 2-5; Aff. of Marrio Moreland, Pl.'s Opp'n Mot. Summ. J. Ex. A, ECF No. 112; <u>Foster</u>, 554

23   F.3d at 814 ("Although an inmate is required to show awareness of the risk, a factfinder may

24   conclude that a prison official knew of a substantial risk from the very fact that the risk was

25   obvious. . . . The risk that an inmate might suffer harm as a result of the repeated denial of meals

26   is obvious.").

27         Second, summary judgment must also be denied on Johnson's Eighth Amendment claim

28   as it relates to his attempted suicide. Defendants have not produced any evidence disputing the fact

that Johnson notified ESP officials of his need to see a mental health professional on August 6, 2012 because he was having an extreme psychological episode, nor have they disputed that he was not seen until August 10, 2012 or that he did attempt suicide on August 6 and injured his neck. Although Defendants argue that there is no evidence that they deliberately ignored Johnson's grievances, Johnson has contradicted this by stating in his affidavit that he pushed the emergency call button for two and a half hours before an ESP official responded to him by dismissing his concerns, and that the response to his emergency grievance was that it was not an emergency. See Johnson Aff. at 5-6. A rational factfinder could reasonably infer from this evidence that Defendants deliberately disregarded an obvious risk to Johnson's health, safety and well-being by failing to respond in an appropriate fashion on August 6, 2012, leading to Johnson's suicide attempt.

## V.        PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Following the hearing on the Motion for Summary Judgment, Johnson filed a Motion for Judgment on the Pleadings. ECF No. 129. In his motion, he argues that there is no genuine dispute of material fact as to (1) his First Amendment free exercise claim as it relates to the observance of Ramadan and the Eid-al-Fitr feast, and (2) his First Amendment retaliation claim as it relates to the issuance of a Notice of Charges against him. After reviewing the parties' briefs, the Court denies the motion.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court may grant judgment on the pleadings "when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." Rose v. Chase Bank U.S.A., N.A., 513 F.3d 1032, 1036 (9th Cir. 2008) (quoting Milne ex rel. Coyne v. Stephen Slesinger, Inc., 430 F.3d 1036, 1042 (9th Cir. 2005)). For purposes of a Rule 12(c) motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). To prevail on a motion for judgment on the pleadings, the moving party must "clearly establish[] on the face of the pleadings that no material issue of fact remains to be resolved . . . . [J]udgment

on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." Id.

The Rule 12(c) motion for judgment on the pleadings was filed by Johnson, the plaintiff. Therefore, for purposes of this motion, the Court must look to the pleadings and assume that any of Johnson's allegations that have been denied by Defendants are false. Defendants' Answer to the Second Amended Complaint denies every single factual allegation that could potentially establish a basis for judgment in Johnson's favor. Therefore, assuming these allegations to be false, Johnson has not demonstrated that he is entitled to judgment as a matter of law.

The Court notes that in his motion, Johnson incorporated all the exhibits he submitted in opposition to Defendants' Motion for Summary Judgment. The Court declines to consider Johnson's exhibits in the context of his Rule 12(c) motion, as this type of motion is confined to an analysis of the pleadings. Moreover, even if it were to consider Johnson's motion as a motion for summary judgment and consider the evidence he incorporated, the Court would deny summary judgment because, as discussed previously in this opinion, genuine disputes of material fact exist as to each of the claims for which Johnson seeks judgment in his favor.

## VI.    CONCLUSION

For the reasons discussed above,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 105) is GRANTED IN PART and DENIED IN PART, as follows:

- Summary judgment is denied on Count One (First Amendment free exercise claim).
- Summary judgment is granted in favor of Defendants on Count Two (Fourteenth Amendment equal protection claim), but only as it relates to the allegations that Defendants prevented Johnson from participating in the Eid-al-Fitr feast and confiscated his kufi. Summary judgment is denied as to the remainder of Count Two.
- Summary judgment is granted in favor of Defendants on Count Three (First Amendment retaliation claim), but only as it relates to the alleged confiscation of

Johnson's kufi. Summary judgment is denied as to the remainder of Count Three.

- Summary judgment is denied on Count Four (Eighth Amendment deliberate indifference claim).

**IT IS FURTHER ORDERED** that Plaintiff Lausteveion Johnson's Motion for Judgment on the Pleadings (ECF No. 129) is DENIED.

DATED: March 7, 2016.

_____

**RICHARD F. BOULWARE, II**
**United States District Judge**